UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ASHYA BLEU RED BEAR,<br><br>                         Plaintiff,<br><br>          vs.<br><br>CORRECTIONAL MEDICAL MGMT, LLC; MINNEHAHA CO JAIL; and WARDEN MICHAEL MATTSON,<br><br>                         Defendants. | 4:23-CV-04127-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff, Ashya Bleu Red Bear, a former inmate at the Minnehaha County Jail, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. Red Bear moves for leave to proceed in forma pauperis and provided her prisoner trust account report. Dockets 2 and 12. Red Bear also filed a motion to appoint counsel. Docket 4.

## I.   Motion for Leave to Proceed In Forma Pauperis

Red Bear reports average monthly deposits of $20.83 and an average monthly balance of $20.83. Docket 12 at 1. Under the Prison Litigation Reform Act (PLRA), a prisoner[1] who "brings a civil action or files an appeal in forma

---

[1] Under 28 U.S.C. § 1915(h), a prisoner means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law . . . ." After filing her complaint, Red Bear was furloughed to the Arch Residential Treatment Center from the Minnehaha County Jail. Docket 10 at 1–2. An inmate released to a halfway house as a condition of mandatory supervision qualifies as a prisoner for 28 U.S.C. § 1915(h). *See Jackson v. Johnson*, 475 F.3d 261, 267 (5th Cir. 2007) ("Even if [plaintiff's] time at the halfway house is for primarily non-

pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C.
§ 1915(b)(1). The court may, however, accept partial payment of the initial filing
fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only
issue is whether the inmate pays the entire fee at the initiation of the
proceedings or over a period of time under an installment plan." *Henderson v.
Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting
*McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is
calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20
percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-
> month period immediately preceding the filing of the complaint or
> notice of appeal.

Based on the information regarding Red Bear's prisoner trust account, the
court grants Red Bear leave to proceed in form pauperis and waives her initial
partial filing fee because the initial partial filing fee would be greater than her
current balance. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be
prohibited from bringing a civil action . . . for the reason that the prisoner has
no assets and no means by which to pay the initial partial filing fee.").

In order to pay her filing fee, Red Bear must "make monthly payments of
20 percent of the preceding month's income credited to the prisoner's account."

---

punitive purposes, [she] is nonetheless a 'prisoner' within § 1915(h)'s definition
because [her] confinement is as a result of [her] criminal violation."). Thus, Red
Bear is classified as a prisoner under the PLRA.

28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Red Bear's institution.[2] Red Bear remains responsible for the entire filing fee, as long as she is a prisoner. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

---

[2] Courts have required agencies—including halfway houses—housing plaintiffs proceeding in forma pauperis to collect installments of initial filing fees when resident plaintiffs were classified as prisoners under the PLRA. *See Ealey v. United States*, 2022 WL 2715956, at *1–2 (D. Neb. July 13, 2022) (ordering collection of filing fee installments by plaintiff's institution pursuant to § 1915(b)(2) when plaintiff was housed in a federal halfway house); *Lasher v. Neb. State Bd. of Pharm.*, 2018 U.S. Dist. LEXIS 96484, at *1–3 (D. Neb. June 6, 2018) (ordering collection of appellate filing fee installments under § 1915(b)(2) when plaintiff was housed in a halfway house); *Harold v. McCray*, 2016 U.S. Dist. LEXIS 128720, at *1, 3–5 (D.N.J. Sept. 21, 2016) (ordering collection of filing fees by the institution housing plaintiff and serving a copy of the order requiring collection of fees to the halfway house administrator and state attorney general); *Johnson v. Massachusetts*, 2017 U.S. Dist. LEXIS 82082, at *2 (D. Mass. May 30, 2017) (ordering continued payments of monthly installments of filing fees when a plaintiff was transferred to a halfway house); *Jordan v. N.J. Dep't of Corr.*, 2019 U.S. Dist. LEXIS 173541, at *5–6 (D.N.J. Oct. 7, 2019) (ordering collection of filing fees by the institution housing plaintiff and serving a copy of the order requiring collection of fees to the halfway house administrator and state attorney general); *Tucker v. Shawnee Cnty. Jail*, 2006 U.S. Dist. LEXIS 65842, at *2 (D. Kan. Sept. 14, 2006) (ordering the collection of filing fees in compliance with § 1915(b)(2) when a plaintiff was housed in a halfway house).

**II.      1915A Screening**

   **A.      Factual Background**

The facts alleged in Red Bear's complaint are: that defendants violated
her rights by discussing her medical results when other inmates were present.
Docket 1 at 2, 4–6, 8; Docket 1-1 at 3. When Red Bear was admitted to the
Minnehaha County Jail, she was given a tuberculosis (TB) test. Docket 1-1
at 3. A few days later, she noticed a raised and painful bump on her arm where
she received the TB test. *Id.* At 7:30 a.m., she requested to be seen by medical,
but she was not seen until between 8:30 p.m. and 9:00 p.m. *Id.*

An employee of Correctional Medical Management, LLC (CMM)[3] told Red
Bear at the door of her pod that her TB test was positive. *Id.*; Docket 1 at 2, 6.
After closing the door, a second staff member confirmed the positive TB test
result. Docket 1 at 2, 6; Docket 1-1 at 3. Red Bear claims that her results were
stated out loud twice in front of other inmates. Docket 1 at 2, 4. She also
alleges that "[a]t no point in time was there any great deal of effort to keep [her]
results from being publicized in the company of the other inmates present in
[her] block." Docket 1-1 at 3. On a separate occasion, another inmate informed
Red Bear that she did not have TB because "medical told [the other inmate]
that no one in the jail had an active case of TB – prior to [Red Bear] being

---

[3] CMM is a private company that has contracted with the Minnehaha County
Jail. Private companies act under color of state law when providing services in
the jail and can be sued under § 1983. *See West v. Atkins*, 487 U.S. 42, 56
n.15 (1988); *Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604, 617 (8th Cir. 2021).
Thus, for the purposes of screening, the court assumes that CMM was acting
under color of state law.

notified of [her] personal results." Docket 1 at 4. Red Bear alleges that CMM failed to show regard for her welfare when discussing her test results with other inmates present. *Id.* at 6.

Red Bear alleges that the Minnehaha County Jail put her in medical isolation because of her TB status. *Id.* at 2. She claims that her stay in medical isolation "was one of the most horrifying and terrifying experiences in [her] life[.]" *Id.* at 7. She barely slept during the night while in isolation and was "very scared and alone and wanted some one [sic] just to tell [her that she] would be okay." *Id.* She claims that the stay caused her grief, scrutiny, and humiliation. *Id.* She also alleges that the medical staff spread misinformation by informing other inmates that Red Bear's form of TB was not contagious, yet medical staff wore hazmat suits and sprayed down the entire block. *Id.*

She alleges that "[t]he actions of the facility as a WHOLE caused [her] to be treated VERY badly by other inmates." *Id.* at 4. She claims to have been verbally assaulted and ridiculed because of her positive TB test. *Id.* She alleges that she was required to stay in other cell blocks because of the disclosure of her TB status. *Id.* at 6. Regardless of where she was placed in the jail, the majority of the other inmates in the facility were aware of her TB status. *Id.* Red Bear alleges that she only felt relief once she was sentenced and released from custody. *Id.* at 7.

Red Bear alleges that CMM's actions caused her anxiety, which increased her blood pressure. *Id.* at 4–5, 9. Medical staff noticed her stopping in the hall and grabbing her chest because of tightness and pain. *Id.* at 5, 7. She claims

that her blood pressure was so elevated from the stress caused by CMM that she almost was ready to go into cardiac arrest. *Id.* at 5–6. After checking her blood pressure, Red Bear was sent to her room, and medical staff returned with a small pill to reduce her elevated blood pressure. *Id.* at 5–7. Red Bear alleges that she was never informed what medication she was given. *Id.* at 4–7.

Red Bear claims that she filed a grievance with Minnehaha County Jail Warden Michael Mattson about employees discussing her medical results, but "he stated it would be addressed and closed the grievance. Basically gave it no other consideration." *Id.* at 2. Red Bear states that her "grievance was basically held to an unsubstantiated level of claim and the administrative relief in reaction to [her] grievance was not satisfactory and the level of disregard by the warden in the issue at that time is well to be noted as short of an epic fail." *Id.* at 10. She claims that she "should have been taken seriously and the level of humiliation [she] felt during [her] time in his jail is something [she] will NEVER totally forget." *Id.* Red Bear has since been released from the Minnehaha County Jail to the Arch Residential Treatment Center in Sioux Falls, South Dakota. Docket 10 at 1–2.

Red Bear sues defendants in their individual and official capacities. Docket 1 at 2. Her complaint alleges three counts: count one for violations of the Health Insurance Portability and Accountability Act (HIPAA), count two for violations of her right to be free from cruel and unusual punishment, and count three for violations of her right to due process. *Id.* at 4, 6, 8. On count one, she seeks $4.5 million for the HIPAA privacy violations and disclosure of

health information. Docket 1-1 at 5. On count two, she requests the following damages: (1) $5 million for cruel and unusual punishment, (2) $5 million for endangering welfare of an inmate, (3) $5 million for libel, and (4) $700,000 for contributory negligence. *Id.* On count three, she seeks between $2 million and $5 million for deprivation of her right to due process. *Id.* She hopes that a large monetary settlement will change the way that defendants handle similar situations in the future. Docket 1 at 11–12.

### B.   Legal Background

The court must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when

it dismisses a claim based on vague allegations or unsupported generalizations). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554–63)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now screen Red Bear's complaint under 28 U.S.C. § 1915A.

### C.    Legal Analysis

#### 1.    Claims Against Minnehaha County Jail

Red Bear sues the Minnehaha County Jail. Docket 1 at 2. The Eighth Circuit has held that "county jails are not legal entities amendable to suit." *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam). A county jail "cannot be held vicariously liable for the actions of its employees." *Larsen v. Minnehaha Cnty. Jail*, 2008 WL 4753756, at *2 (D.S.D. Oct. 24, 2008) (citing *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988)). Thus, Red Bear's claims against the Minnehaha County Jail are dismissed without prejudice for

failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.   Claims Against CMM

Red Bear sues CMM because "[t]wo of their employees read [her] TB results at the door of [her] pod and then discussed [her] medical results with another inmate in medical." Docket 1 at 2. "A corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The test is whether there exists a policy, custom or action by those who represent official policy which inflicts an injury actionable under § 1983." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (internal citation omitted). Red Bear has not alleged the existence of a policy, custom, or action by those who make the official policy of the corporation. She solely alleges that two of CMM's employees discussed her medical results with other inmates without regard for her safety or right to privacy. *See* Docket 1 at 2, 4, 6–8, 12; Docket 1-1 at 3–4. Thus, Red Bear's claims against CMM are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3.   Claims Against Mattson

#### a.   Official Capacity Claim Against Mattson for Money Damages

Red Bear sues Mattson in his official capacity seeking money damages. Docket 1 at 2; Docket 1-1 at 5. Mattson is an employee of the Minnehaha County Jail. *See* Docket 1 at 2. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing

9

governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A county government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Id.*; *see also Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1997) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016)). A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." *Crumpley-Patterson*, 388 F.3d at 591 (citing *Doe ex rel. Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that

10

creates an inference that the conduct resulted from an unconstitutional policy or custom. *Id.*; *see also Doe*, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Red Bear does not allege an unconstitutional policy or custom. Thus, Red Bear's claim against Mattson in his official capacity for money damages is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### b.    Individual Capacity Claims Against Mattson

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up).

### (1).    HIPAA Claim

Red Bear alleges that defendants violated her rights under HIPAA because they read her information out loud in front of other inmates. Docket 1 at 4. "Courts have repeatedly held that HIPAA does not create a private right in implied-right-of action cases. Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of

action." *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 138–39 (8th Cir. 2009) (per curiam) (internal citations omitted). Thus, Red Bear's HIPAA claim against Mattson in his individual capacity is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (2).   Eighth Amendment Claim

Red Bear claims that Mattson was deliberately indifferent to her serious medical needs in violation of the Eighth Amendment. Docket 1 at 6. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Est. of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.

1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [she] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Coleman*, 114 F.3d at 784 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Red Bear does not allege that Mattson was personally involved in her medical care or that he was deliberately indifferent to her medical needs. Red Bear only alleges that Mattson did not sufficiently resolve her grievance in which she reported medical staff for discussing her medical results with other inmates or when other inmates were present. *See* Docket 1 at 2, 10. Thus, Red Bear's Eighth Amendment deliberate indifference claim against Mattson in his individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### (3).   **Medical Isolation Claim**

Red Bear alleges that her Fourteenth Amendment Due Process rights were violated because she was placed in the medical isolation unit. *Id.* at 8.

13

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Once a liberty interest is established, the next question is what process is due." *Id.* (quoting *Williams v. Norris*, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)). This question need only be answered if the inmate can establish a constitutionally protected liberty interest. *Id.* (citing *Wilkinson*, 545 U.S. at 221). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* (quoting *Wilkinson*, 545 U.S. at 221). "[I]nmates possess a state-created liberty interest in avoiding assignment to conditions of confinement that 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Id.* at 1080 (second alteration in original) (quoting *Wilkinson*, 545 U.S. at 223). The Supreme Court has applied this principle, first articulated in *Sandin v. Conner*, 515 U.S. 472 (1995), to inmate assignment to higher security prisons. *See Wilkinson*, 545 U.S. at 223.

The Eighth Circuit has explained that there is no "established 'baseline from which to measure what is atypical and significant in any particular prison system[.]' " *Smith*, 954 F.3d at 1081 (quoting *Wilkinson*, 545 U.S. at 223). But the Eighth Circuit has "affirmatively held what does *not* constitute an atypical or significant deprivation." *Id.* For instance, "a demotion to segregation, even

without cause, is not itself an atypical and significant hardship." *Id.* at 1082
(quoting *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)). An inmate "must
show some difference between [her] new conditions in segregation and the
conditions in the general population which amounts to an atypical and
significant hardship." *Id.* (quoting *Phillips*, 320 F.3d at 847); *see also Kennedy
v. Blankenship*, 100 F.3d 640, 642–43 (8th Cir. 1996) (collecting post-*Sandin*
cases in which deprivations were upheld as not atypical and significant
hardships).

Red Bear alleges that she was put in medical isolation without due
process. Docket 1 at 8. She does not allege differences between the conditions
in medical isolation and the general population to show an atypical and
significant hardship. *Id.* Even if Red Bear did allege sufficient facts to show an
atypical and significant hardship, she has not alleged that Mattson was
individually involved with her alleged deprivation of due process. Thus, Red
Bear's claim against Mattson in his individual capacity for violation of her
Fourteenth Amendment rights is dismissed without prejudice for failure to
state a claim upon which relief may be granted under 28 U.S.C.
§§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### (4).   Substantive Due Process Claim

Construing Red Bear's complaint liberally, she brings a claim against
Mattson in his individual capacity for failure to investigate her grievances
regarding CMM employees violating her right to privacy. Docket 1 at 8. The
Eighth Circuit has recognized a substantive due process claim for criminal

defendants against "reckless or intentional failure to investigate that shocks the conscience[.]" *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009). This claim applies when officials' conscience-shocking failure to investigate results in the denial of a criminal defendant's "interest in obtaining fair criminal proceedings[.]" *See id.* at 1183 n.2 (quoting *Wilson v. Lawrence Cnty*, 260 F.3d 946, 956 n.8 (8th Cir. 2001)). A criminal defendant can bring such a claim in the following circumstances: "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Id.* at 1184. Here, Red Bear does not allege that Mattson failed to investigate criminal charges against her. *See* Docket 1 at 8. Thus, her Fourteenth Amendment substantive due process claim for failure to investigate against Mattson in his individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### (5). Procedural Due Process Claim

Construing Red Bear's complaint liberally, she brings a claim against Mattson in his individual capacity for insufficiently investigating her grievances in violation of her Fourteenth Amendment right to procedural due process. Docket 1 at 8, 10. "While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (holding that a refusal

16

to process grievances alone did not state a constitutional deprivation). "A prison grievance procedure is a procedural right only; it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Id.* (cleaned up); *see also King v. Houston*, 556 F. App'x 561, 563 (8th Cir. 2014) ("[P]rison officials' failure to process or investigate grievances, without more, is not actionable under § 1983"). Here, Red Bear alleges that Mattson disregarded and failed to sufficiently investigate her grievance. Docket 1 at 10. But failure to investigate alone does not arise to the level of a constitutional violation. Thus, Red Bear's Fourteenth Amendment procedural due process claim against Mattson in his individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

Thus, it is ORDERED:

1.    That Red Bear's Motion for Leave to Proceed In Forma Pauperis (Docket 2) is granted.

2.    That the institution having custody of Red Bear is directed that whenever the amount in Red Bear's trust account, exclusive of funds available to her in her frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Red Bear's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid.

3.      That Red Bear's claims against the Minnehaha County Jail are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

4.      That Red Bear's claims against CMM are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5.      That Red Bear's claim against Mattson in his official capacity for money damages is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

6.      That Red Bear's HIPAA claim against Mattson in his individual capacity is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7.      That Red Bear's Eighth Amendment claim against Mattson in his individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

8.      That Red Bear's Fourteenth Amendment claims against Mattson in his individual capacity are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

9.      That Red Bear's state-law claims of libel and negligence are dismissed without prejudice under 28 U.S.C. § 1367(c)(3), without considering the merits of the claims, because this court lacks subject matter jurisdiction.

10.   That Red Bear's motion to appoint counsel (Docket 4) is denied as

moot.

Dated December 29, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE